1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    EDWARD B. SPENCER,                    Case No. 1:20-cv-00682-JLT-HBK

12                   Plaintiff,             FINDINGS AND RECOMMENDATIONS TO
                                            GRANT DEFENDANT'S MOTION FOR
13         v.                               SUMMARY JUDGMENT[1]

14    RICHARD MILAN,
                                            FOURTEEN-DAY OBJECTION PERIOD
15                   Defendant.
                                            (Doc. No. 47)
16

17         Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 47,

18   "MSJ").  Finding no issues of material fact, the undersigned recommends that the district court

19   grant Defendant's MSJ on Plaintiff's conditions of confinement claim.

20                              **I. BACKGROUND**

21         **A. Procedural History and Allegations in Operative Complaint**

22         On May 14, 2020, Plaintiff initiated this action while confined at California Department of

23   Corrections and Rehabilitation ("CDCR").  (Doc. No. 1).   On August 12, 2021, the previously

24   assigned magistrate recommended that the case proceed only on Plaintiff's Eighth Amendment

25   conditions of confinement claim against Defendant Milan, dismissing all other claims for failure

26   to state a claim. (Doc. No. 12).  On September 20, 2021, Plaintiff filed a notice electing to

27   ─────────────

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2023).

1   proceed solely on the Eighth Amendment claim against Defendant Milan.  (Doc. No. 15).  The

2   magistrate issued Findings and Recommendations on September 23, 2021, recommending that the

3   case proceed only on the Eighth Amendment claim and that all other claims and defendants be

4   dismissed.  (Doc. No. 17). Plaintiff did not file objections, and on November 2, 2021, the District

5   Judge adopted the Findings and Recommendations in full.  (Doc. No. 19).

6          In relevant part, the complaint alleges that Defendant Richard Milan, Superintendent of

7   Building Trades at CDCR's California Substance Abuse Treatment Facility ("SATF"), subjected

8   Plaintiff to hazardous and unsanitary conditions of confinement in the Facility G dining hall.

9   (Doc. No. 1 at 1, 8–9).  Specifically, Plaintiff alleges that the dining hall has long suffered from

10   structural deterioration, including a leaking roof, saturated and collapsing ceiling tiles, and

11   corroded electrical systems. (*Id*. at 9–13).  Plaintiff recounts specific incidents in which

12   contaminated water fell onto his head, food tray and clothing during meals.  (*Id*. at 13–15).

13   Plaintiff asserts that these conditions have persisted for years and that Defendant Milan has been

14   aware of the risks but has failed to initiate timely or effective repairs.  (*Id*. at 12–14).  On January

15   27, 2019, another inmate, Paul John Denham, submitted a complaint to Warden Sherman and

16   Defendant Milan regarding ceiling damage.  (*Id*. at 13-14).  Milan responded that SATF had

17   multiple leaks and that staffing and budget constraints prevented timely repairs. (*Id*.).  Plaintiff

18   seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id*. at 17–

19   18).

20          **B.  Operative Pleadings**

21          Supporting his MSJ, Defendant Milan submits: (1) a memorandum of points and

22   authorities (Doc. No. 47); (2) a statement of undisputed material facts (Doc No. 47-4); (3) his

23   own sworn declaration (Doc No. 47-1); (4) the sworn declaration of A. Tartaglio (Doc No. 47-2).

24          On May 8, 2023, Plaintiff filed his Opposition.  (Doc. No. 53).  In support, Plaintiff

25   submits: (1) a memorandum of points and authorities; (2) a response to Defendant's undisputed

26   material facts (*id*. at 6–23); (3) the sworn declaration of inmate Frank Lopez (*id*. at 28); (4) the

27   sworn declaration of inmate Cain Balkram; (*id.* at 34); (5) his own sworn declaration (*id*. at 35-

28   44); (6) a letter from the prison law office (*id*. at 30-32); and (7) a medical record from February

2

1   2019 (*id*. at 25-26).  Defendant filed a Reply in support of his MSJ and a Response to Plaintiff's

2   Allegedly Disputed Facts.  (Doc. Nos. 54, 54-1).  Notably, although inmates Lopez and

3   Balkram's declarations are sworn to under penalty of perjury, both declarations appear to be in

4   Plaintiff's handwriting and neither signature is legible.  (*Compare* Doc. Nos. 53 at 28 and 34 with

5   35-44).

6                                              **II.  APPLICABLE LAW**

7   **A.  Summary Judgment Standard**

8         The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

9   order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith*

10  *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate

11  when there is "no genuine dispute as to any material fact and the movant is entitled to judgment

12  as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate

13  time for discovery and upon motion, against a party who fails to make a showing sufficient to

14  establish the existence of an element essential to that party's case, and on which that party will

15  bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

16  moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of

17  material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence

18  for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

19  affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477

20  U.S. 242, 248 (1986).

21        If the moving party meets its initial burden, the burden then shifts to the opposing party

22  to present specific facts that show there to be a genuine issue of a material fact.  *See* Fed R. Civ.

23  P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that

24  there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 587.  The

25  party is required to tender evidence of specific facts in the form of affidavits, and/or admissible

26  discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P.

27  56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a

28  material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be

1    shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

2    *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

3    1987).  However, "failure of proof concerning an essential element of the nonmoving party's

4    case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

5         The court must apply standards consistent with Rule 56 to determine whether the

6    moving party demonstrated there is no genuine issue of material fact and showed judgment to be

7    appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

8    "[A] court ruling on a motion for summary judgment may not engage in credibility

9    determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

10   2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

11   nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving

12   party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  A mere scintilla

13   of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly

14   supported summary judgment motion. *Anderson.*, 477 U.S. at 252.  However, where "opposing

15   parties tell two different stories, one of which is blatantly contradicted by the record" courts

16   "should not adopt that version of the facts for purposes of ruling on a motion for summary

17   judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

18        Plaintiff's verified complaint may serve as an affidavit in opposition to summary

19   judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v.*

20   *Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory

21   allegations unsupported by specific facts, will not be sufficient to avoid summary judgment.

22   *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And,

23   where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may

24   be deemed to have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

25        The undersigned has carefully reviewed and considered all arguments, points and

26   authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

27   objections, and other papers filed by the parties.  The omission to an argument, document, paper,

28   or objection is not to be construed that the undersigned did not consider the argument, document,

1    paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

2    deemed admissible, material, and appropriate for purposes of issuing these Findings and

3    Recommendations.

### B.  Eighth Amendment – Conditions of Confinement

5         "[T]he treatment a prisoner receives in prison and the conditions under which he is

6    confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and

7    unusual punishment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); U.S. Const. Amend. VIII.

8    Inmates who allege they are being subjected to unsafe conditions that are violative of the Eighth

9    Amendment must assert facts that reflect a showing of two components: (1) an "objective

10   component"—the objective seriousness of the challenged condition, and (2) a "subjective

11   component"—the responsible official's subjective state of mind.  *Farmer v. Brennan*, 511 U.S.

12   825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

13        In challenging living conditions under the Eighth Amendment, a prisoner must establish

14   "unquestioned and serious deprivations of basic human needs" or the absence of the "minimal

15   civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *accord*

16   *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Basic human needs identified by the Supreme Court

17   include "food, clothing, shelter, medical care and reasonable safety," *Helling*, 509 U.S. at 32, as

18   well as "warmth [and] exercise."  *Wilson*, 501 U.S. 199–200.  Factors affecting whether a

19   condition is sufficiently serious include its duration, the attendant circumstances, and nature of

20   the particular deprivation.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

21        To satisfy the subjective prong, the inmate must show that the prison official was

22   deliberately indifferent—"possessed a sufficiently culpable state of mind."  *Wilson*, 501 U.S.

23   297–98.  This requires the official to be aware of the substantial risk of harm and disregard that

24   risk by failing to abate it using reasonable measures.  *Farmer*, 511 U.S. at 837–45.  This level

25   requires more than negligence but less than actual malice.  *Id.* at 835–36.

### III.  ANALYSIS

### A.  Undisputed Material Facts

28        Defendants provide a statement of undisputed material facts.  (Doc. No. 47-4).  Each

1    listed fact cites to sworn declarations, deposition testimony, and the complaint.  (*See* generally

2    *id*.).  By his opposition, Plaintiff contests nine of Defendant's material facts listed in his statement

3    of undisputed material facts.  (Doc. No. 53 at 6–13).  Defendant also submitted a response to

4    Plaintiff's contested facts,  (Doc. No. 54-1).  Where Plaintiff's response to Defendant's statement

5    of undisputed facts is based solely on conclusory statements and lacks detailed facts or adequate

6    evidence, while Defendants provide detailed facts supported by a sworn declaration or

7    documentary evidence, the Court generally does not find Plaintiff's objections sufficient to

8    establish a genuine dispute of material fact.  *See Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th

9    Cir. 2000) (en banc); *see also FTC v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir.

10   1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence,

11   is insufficient to create a genuine issue of material fact.").  Having reviewed the record, the

12   undersigned finds the following facts to be material and undisputed, unless otherwise noted.

13   • Spencer transferred to G Facility on December 15, 2019 and stayed there for about eight

14      months. (Doc. No. 47-2 at 3-29 ("Spencer Depo. Tr.") at 27:25-28:25).

15   • Around the middle of February 2020, Spencer noticed problems with the ceiling at

16      Facility G's dining hall. (Spencer Depo. Tr. at 20:17 to 21:5).

17   • Around February 24 and 25 of 2020, Spencer saw water leaking from the ceiling of the

18      Facility G dining hall, saw birds and bats flying around, and observed water contaminated

19      with animal feces leaking into the dining area. (Spencer Depo. Tr. at 22:17 to 23:3).

20   • On March 23, 2020, Spencer submitted an administrative appeal to complain about the

21      ceiling in Facility G. (Doc. No. 47-2 at 31-38; Spencer Depo. Tr. at 32:21 to 33:2; Doc.

22      No. 47-1 at 3 ¶ 11; id. at 17-24).

23   • Spencer's March 23, 2020 appeal appears to be the only document that Spencer submitted

24      about these issues. (Spencer Depo. Tr. at 40:13-16).

25   • Although the leaky ceiling did not make him ill, the unsanitary water from the ceiling

26      leaked onto Spencer's meal tray on two occasions. (Spencer Depo. Tr. at 33:16-23).

27      Plaintiff admits he did not "get an illness, but [he] got sick to [his] stomach and didn't go

28      back to that chow hall for about 2 weeks." (Doc. No. 53 at 8).

1       • On one of these occasions in which contaminated water fell onto his food tray, Spencer

2          felt an urge to vomit but did not ultimately vomit.  (Spencer Depo. Tr. at 38:18-21).

3       • Other than the brief feeling of nausea that Spencer experienced, Spencer is not claiming

4          that he became sick as a result of the ceiling leak at Facility G. (Spencer Depo. Tr. at

5          39:22 to 40:1). Plaintiff disputes this fact. However, Plaintiff's declaration proffered in

6          support of refusing this fact admits "that [w]hen [the water] fell in [his] tray [he] didn't get

7          sick because [he] didn't eat it. [He] got sick to [his] stomach for that disgusting

8          contaminated water. . .." (Doc. No. 53 at 15, 19).

9       • Spencer did not actually eat from the trays that became contaminated with the unsanitary

10         ceiling water. (Spencer Depo. Tr. at 38:11-18; Doc. No. 53 at 19).

11      • Spencer never notified Milan about the ceiling leak at Facility G. (Spencer Depo. Tr. at

12         54:19-21).

13      • Spencer does not know when Milan became aware of the leaky ceiling in Facility G or

14         what he did to address it. (Spencer Depo. Tr. at 54:22-24; *id*.. at 74:22-25).

15      • Spencer has never met Milan. (Spencer Depo. Tr. at 18:17-19).

16      • Spencer has no personal knowledge of the repairs CDCR performed on the Facility G

17         ceiling in March and April of 2020. (Spencer Depo. Tr. at 30:6-9; *id*. at 37:1-19; *id*. at

18         74:18-75:4).

19      • Problems with the roofs at SATF caused a number of roof and ceiling leaks. Whenever

20         work orders were submitted regarding roof leaks in the prison, Milan or other

21         maintenance staff would inspect the leak and patch it. (Doc. No. 47-1 at 2 ¶ 3).

22      • Due to the number of leaks throughout the prison, the time it takes to repair them, and

23         staffing and budget issues, work orders were prioritized by the severity of leaks. (Doc. No.

24         47-1 at 2 ¶ 3).

25      • Milan worked overtime and on weekends to address the ceiling leaks at SATF, but a

26         permanent fix required replacement of the entire roof. (Doc. No. 47-1 at 2 ¶ 4).

27      • Requests for funding for roof replacement had already been made before Milan assumed

28         responsibilities for facility maintenance. (Doc. No. 47-1 at 2 ¶ 4).

7

1    • Milan had no control over the funding for roof replacement and did the best he could to

2        address leaks within the prison with the resources available to him while awaiting

3        approval and funding to replace the roofs. (Doc. No. 47-1 at 2 ¶ 5).

4    • There were several maintenance work orders that SATF staff issued in February of 2020

5        to fix problems at the G building's dining room. (Doc. No. 47-1 at 2 ¶ 6.)

6    • The Milan declaration attaches four authentic work orders for the G building dining room

7        ceiling. (Doc. No. 47-1 at 5-15).

8    • The four work orders issued on February 10, 2022 and were fulfilled in April 2022, about

9        two months later. (Doc. No. 47-1 at 5-15).

10    • The first level response to Spencer's appeal about the leaky roof at the Facility G dining

11        hall explained that a work order had issued for the roof leaks in February of 2020,

12        approximately one month before Spencer submitted the appeal. (Doc. No. 47-1 at 17-24).

13        The first level response also explained that the repairs were completed in April 2020,

14        about a month after Spencer submitted the appeal. (*Id*.). Plaintiff disputes this fact citing

15        to inmate Franks Lopez' declaration in support, which states: "While housed on Facility

16        G, during the rainy season after April 2020, I personally observe rainwater leaking from

17        'B' section of Dining Hall on Facility G." (Doc. No. 53 at 28).

18    **A. PLRA Physical Injury Requirement**

19        The PLRA includes a provision that restricts prisoners from bringing federal civil actions

20    for mental or emotional injuries sustained while in custody unless they can show a prior physical

21    injury.  Section 1997e(e) states: "[n]o Federal civil action may be brought by a prisoner confined

22    in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in

23    custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This provision

24    "requires a prior showing of physical injury that need not be significant but must be more than *de*

25    *minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *see also Bell v. Williams*, 108

26    F.4th 809, 829 (9th Cir. 2024) ("The law does not require a prisoner to suffer a 'significant'

27    physical injury. Rather, the injury need only be more than *de minimis*." (citations omitted)).

28

1     Plaintiff testified that water from the ceiling leaked onto his meal tray on two occasions.

2   (Spencer Depo. Tr. at 33:16-23).  On one of these occasions in which water fell onto his tray,

3   Plaintiff felt an urge to vomit but did not ultimately vomit.  (*Id*. at 38:18-21).  The record reflects

4   that Plaintiff never contracted a sickness, other than this single momentary instant he felt

5   nauseous. Thus, undisputed facts establish that Plaintiff's physical injury is not more than *de*

6   *minimis*. (*Compare Preayer v. Ryan*, 2017 WL 2351601, at \*3–4 (D. Ariz. May 31, 2017)

7   (finding allegations more than *de minimis* when prisoner endured for two months a nonfunctional

8   toilet, persistent urine odor, and prolonged delays—often for hours—to relieve himself), *with*

9   *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (finding allegations when

10   prisoner vomited due to the stench of raw sewage covering the isolation cell floor, without more,

11   precluded his conditions of confinement claims under § 1997e(e)).  Thus, Plaintiff's complaints

12   that he felt sick to his stomach due to the condition of the ceiling does not state a physical injury

13   for purposes of stating a constitutional violation.  Plaintiff does not  allege that the condition of

14   ceiling caused any reactions necessitating medical intervention or resulted in significant weight

15   loss due.

16     Therefore, Plaintiff is limited to seeking only nominal or punitive damages as monetary

17   relief.  *See, Oliver*, 289 F.3d at 630 ("To the extent that appellant's claims for compensatory,

18   nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not

19   on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable

20   and those claims are not barred.").

21     **B.  Conditions of Confinement**

22     "Not every deviation from ideally safe conditions amounts to a constitutional violation."

23   *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). "[P]oorly maintained surfaces, wet

24   floors, and leaky roofs do not generally pose a substantial risk of serious harm, and are instead

25   claims fundamentally sounding in negligence—which is insufficient to violate the Eighth

26   Amendment as a matter of law." *Miranda v. Madden*, at \*5 (S.D. Cal. Nov. 4, 2019) (internal

27   citation and quotations omitted). "The Ninth Circuit . . . has held that slippery floors without

28   protective measures could create a sufficient danger to warrant relief where the plaintiff has some

9

1   known exacerbating condition." *Pauley v. California*, 2018 WL 5920780, at \*5 (E.D. Cal. Nov.

2   13, 2018) (cleaned up) (quoting *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)).

3          In the case, Plaintiff does not allege that the leaking ceiling caused any injury.  Further,

4   the uncontroverted evidence demonstrates that work orders were issued in February 2020, a

5   month before Plaintiff submitted a grievance notifying officials of the leaking ceiling.

6   Nonetheless, even assuming that the leaking ceiling in the dining room constituted a sufficiently

7   serious condition to trigger an Eighth Amendment violation, the Court finds Plaintiff's claim fails

8   under the second prong of the deliberate indifference analysis because the undisputed records

9   demonstrates that Defendant Milan did not "possessed a sufficiently culpable state of mind."

10  *Wilson*, 501 U.S. 297–98.

11         Whenever work orders were submitted concerning roof leaks at the prison, Milan or other

12  maintenance staff inspected the affected areas and performed patch repairs.  (Doc. No. 47-1 at 2 ¶

13  3).  Given the number of leaks throughout the facility, the time required to address them, and

14  ongoing staffing and budget constraints, work orders were prioritized based on the severity of the

15  leaks.  (*Id*.).  Milan worked overtime and on weekends to mitigate ceiling leaks at SATF;

16  however, a permanent solution required full roof replacement.  (*Id*. at 2 ¶ 4).  Requests for

17  funding to replace the roof had been submitted prior to Milan assuming responsibility for facility

18  maintenance.  (*Id*.).  Milan had no control over the allocation of roof replacement funds and did

19  what he could to manage the leaks with the resources available to him while awaiting funding

20  approval.  (*Id*. at 2 ¶ 5).

21         Whether a prison official met his or her duties to an inmate under the Eighth Amendment

22  must be considered in the context of the personnel, financial, and other resources available to the

23  official or that he or she could reasonably obtain, at least when the official lacks authority over

24  budgeting decisions.  *Peralta v. Dillard*, 744 F.3d 1076, 1083-84 (9th Cir. 2014) (en banc)

25  (holding that weighing the resources available for prison dental care and the security concerns

26  related to providing care in prison was appropriate in determining if the defendants acted with

27  deliberate indifference).  Here, there is no allegation, yet alone evidence, that Milan did not make

28  repairs when work orders were issued nor that he had access to financial resources and authority

10

1    to replace the ceiling and chose not to replace the ceiling.  Thus, even assuming the leaking roof

2    constituted a substantial risk of harm, Defendant attempted to abate the risk using reasonable

3    measures within his control.  *Cf. Farmer*, 511 U.S. at 837–45.  Therefore, Defendant did not act

4    with deliberate indifference. *See also Rayford v. Sherman*, 2022 WL 1793162, at \*18 (E.D. Cal.

5    May 26, 2022) ("There is no evidence that Defendants were responsible for the water leaking into

6    the cells, but more importantly, they both lacked the financial authorization authority to resolve

7    the water leaks as this depended on funding approval which was not within their control."), *report*

8    *and recommendation adopted*, 2022 WL 4538198 (E.D. Cal. Sept. 28, 2022).  Accordingly, the

9    undersigned recommends that District Court grant Defendant's motion for summary judgment.

10              **C.  Qualified Immunity**

11          In the alternative, Defendant asserts that he is entitled to qualified immunity in this case

12    because no official in his position would believe that their conduct violated Plaintiff's

13    constitutional rights under the circumstances.

14          A government official is entitled to qualified immunity under Section 1983 unless (1) the

15    official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his

16    conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589

17    (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S.

18    800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that

19    the statutory or constitutional question was "beyond debate," such that every reasonable official

20    would understand that what he is doing is unlawful.  *Wesby*, 138 S. Ct. at 589; *Vos v. City of*

21    *Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).  This standard is "demanding" and protects

22    "all but the plainly incompetent or those who knowingly violate the law."  *Wesby*, 138 S. Ct. at

23    589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] court typically should identify a

24    case where an officer acting under similar circumstances as [the defendant] was held to have

25    violated the constitutional right at issue."  *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th

26    Cir. 2017)).  "Even when no case is 'directly on point,' courts may compare relevant factors to

27    determine whether every reasonable officer should have known the conduct in question was

28    unlawful."  *Anderson v. Virga*, 2018 WL 1556806, \*2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v.*

1  *Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017).  The plaintiff bears the burden

2  of establishing that the right alleged was clearly established.  *Moran v. Washington*, 47 F.3d 839,

3  844 (9th Cir. 1998).

4        As discussed *supra*, the Court finds the undisputed facts show that Plaintiff failed to put

5  forth sufficient evidence to establish the essential elements to support conditions of confinement

6  claim against Defendant.  Thus, because the Court finds no constitutional violation, the Court need

7  not address the second prong.

8        Accordingly, it is **RECOMMENDED**:

9      1.  The District Court **GRANT** Defendant's motion for summary judgment in part (Doc.

10        No. 47).

11      2.  Judgment be entered in Defendant's favor and the case closed.

12  **NOTICE TO PARTIES**

13        These Findings and Recommendations will be submitted to the United States District

14  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

15  after being served with a copy of these Findings and Recommendations, a party may file written

16  objections with the Court.  *Id*.; Local Rule 304(b).  The document should be captioned,

17  "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

18  **(15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party

19  wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its

20  CM/ECF document and page number, when possible, or otherwise reference the exhibit with

21  specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by

22  the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §

23  636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the

24  waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

25  Dated:    August 27, 2025

26  HELENA M. BARCH-KUCHTA
    UNITED STATES MAGISTRATE JUDGE

27

28